UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PATRICK TRAINOR; LAW OFFICE OF PATRICK TRAINOR, ESQ., LLC, <br><br> Plaintiff, <br><br> v. <br><br> JAMES McGIBNEY a/k/a INSTAGRAM ACCOUNT @bullyvile and X ACCOUNT @realbullyville; <br><br> Defendants, | CIVIL ACTION NO.: 2:24-cv-8873 <br><br> COMPLAINT |

Plaintiffs, Patrick Trainor, Esq., and Law Office of Patrick Trainor, Esq., LLC, by way of Complaint, alleges and states as follows:

## INTRODUCTION

Defendant James McGibney a/k/a social media accounts Instagram account "@bullyville," and X account "@realbullyville" (hereinafter collectively referred to as "McGibney") published a defamatory falsely sworn declaration that attributes criminality and acts of moral turpitude to Patrick Trainor, Esq., and Law Office of Patrick Trainor, Esq., LLC (collectively "Trainor"). McGibney published his defamatory falsely sworn declaration in a civil action where Trainor represents the plaintiff, but McGibney is not a party, and he simultaneously published the defamatory falsely sworn declaration about Trainor to his social media where it remains published and visible.

McGibney' defamatory falsely sworn declaration stated Trainor committed acts in furtherance of a criminal conspiracy within the State of New Jersey to threaten and harass a New Jersey based process server and her company, and committed a fraud upon the court. McGibney

knew his statements about Trainor were defamatory when he published them, because he possessed video recorded evidence that proved the falsity of his defamatory statements.

Furthermore, Trainor recently discovered additional published defamatory statements where McGibney stated Trainor was a participant in a second criminal conspiracy that was aiding and abetting an international fugitive avoid capture. McGibney uses his own defamatory statements about Trainor as evidence and reported Trainor to the United States Marshall Service, the New Jersey Office of the Attorney General, the Federal Bureau of Investigation ("FBI") and New Jersey State Bar Association as a criminal suspect in the second criminal conspiracy and demanded that these law enforcement agencies open a criminal investigation into Trainor for non-existent fabricated criminal conduct attributed to him solely by McGibney's defamatory statements and defamatory social media publications.

## PARTIES

1. Plaintiff, Patrick Trainor, Esq., an individual, is an attorney licensed by the State of New Jersey, a citizen of the State of New Jersey with address 19 Union Avenue, Suite 201, Rutherford, New Jersey 07070.

2. Plaintiff, Law Office of Patrick Trainor, Esq., LLC, is a limited liability company formed under the laws of the State of New Jersey and is a citizen of the State of New Jersey, its principal place of business is 19 Union Avenue, Suite 201, Rutherford, New Jersey 07070 Rutherford, New Jersey. Its citizenship is determined by its only member Patrick Trainor who is a citizen of the State of New Jersey.

3. Defendant, James McGibney, a/k/a Instagram username "@bullyville" and X username "@realbullyville," ("social media") an individual is a citizen of the State of Texas, who resides at 4305 Ridgebend Dr., Round Rock, Texas 78665.

4. McGibney is an admitted computer hacker, FBI informant,[1] and vexatious litigant with a documented history of aggravating litigation misconduct by willfully and intentionally harassing lawyers and the clients they represent[2] and of using confederates to do the same.

## JURISDICTION AND VENUE

5. This Court has diversity jurisdiction over this action in accordance with 28 U.S.C. § 1332(a)(1).

6. This Court has supplemental jurisdiction over the state law claims asserted in this action pursuant to 28 U.S.C. § 1367(a).

7. Venue is properly laid in the District Court of New Jersey pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to this claim occurred in this district.

8. Plaintiff further invokes the pendent jurisdiction of this Court to hear and decide claims arising out of applicable State law.

## FACTS COMMON TO ALL CAUSES OF ACTION

9. Trainor represents the plaintiff in a civil action in the Middle District of Florida known as *Couture v. Noshirvan*, 2:23-cv-00340-SPC-KCD (M.D. Fla, May 30, 2023) ("Florida Action"). McGibney is not a party to the Florida Action.

10. McGibney a/k/a Instagram username @*bullyville* and X username @*realbullyville* ("social media") uses his social media to threaten, harass, and abuse others, often with the help of some portion of his approximately 23,000 social media followers.

---

[1] *Affidavit of Walker Wicevich, Special Agent, Federal Bureau of Investigation*, dated June 22, 2020, filed in *James McGibney and Via View, Inc., v. Thomas Retzlaff, et al.*, 67th District Court of Tarrant County, Texas, Case No.: 067-270669-14 (Jul. 21, 2016) ECF No. 188-1.
[2] *James McGibney and Via View, Inc., v. Thomas Retzlaff, et al.*, 67th District Court of Tarrant County, Texas, Case No.: 067-270669-14 at 9-10 (Jul. 21, 2016).

11. Prior to McGibney's publication of defamatory statements about him, Trainor had little to no knowledge of McGibney, his social media activities, or of his history of willfully and intentionally harassing lawyers and the clients they represent, and of using confederates to do same. McGibney was and is a complete stranger to Trainor, they had no prior or current acquaintance or relationship.

12. At some point in 2023, McGibney began publishing statements about Trainor that incited a small portion of his social media followers to direct harassing and threatening calls and emails to Trainor's office. Trainor's office received and continues to receive harassing and threatening calls and emails from same.

## DEFAMATORY PUBLICATIONS SPECIFIC TO THIS ACTION

13. On January 15, 2024, Trainor received an email at his office in New Jersey from McGibney, wherein McGibney demanded Trainor withdraw pending discovery requests that he served upon defendant in the Florida Action, which were returnable no later than January 18, 2024 that required Defendant to produce communications he had with McGibney.

14. In his email, McGibney further stated if Trainor did not withdraw the pending discovery requests, he would inform the court that Trainor had committed a fraud upon the court because in an earlier filing Trainor stated that defendant had either "published or arranged to be published" private and public documents on McGibney's social media. In his reply email, Trainor informed McGibney that he would not withdraw the pending discovery request and that his earlier statement was truthful. The truthfulness of Trainor's statement has been confirmed by information produced by defendant in the Florida Action.

15. On January 16, 2024, a process server served Trainor a one-page letter at his office in New Jersey. The one-page letter was McGibney's email except that it was printed on

4

paper that featured a letterhead of a yellow bull atop the word "Bullyville," which is similar to an image on McGibney's social media.

16. When he arranged for Trainor to be served the one page letter, McGibney purchased the added service for the process server's body worn camera to video record the actual service of process upon Trainor. The video was immediately turned over to McGibney upon completion of service on Trainor.

17. The video shows that the process server does not identify herself or her company to Trainor, nor did she provide Trainor a receipt that identified herself and/or her company. The only words spoken was the process server asking Trainor if he was Patrick Trainor and Trainor responding yes. The process server simply served Trainor McGibney's one page letter and exited.

18. Based upon the video recording in his possession McGibney immediately knew Trainor did not know the identity of the process server or her company, and that Trainor could not have conspired to harass and threaten the process server and her company who were unknown to Trainor.

19. On February 8, 2024, in spite of his knowledge that Trainor did not know the identity of the process server or her company, McGibney published a defamatory falsely sworn declaration where he stated that on or about February 6, 2024, Trainor committed acts in furtherance of a criminal conspiracy within the State of New Jersey with an alleged co-conspirator who made threatening and harassing phone calls and emails to the process server who served Trainor and the company she worked for, who are both based in Newark, New Jersey. The email McGibney sent to Trainor with defamatory statements therein, that said

Trainor committed a fraud upon the court were affixed to and published with McGibney's defamatory falsely sworn declaration.

20. McGibney's defamatory statements said Trainor participated in a criminal conspiracy where if true would have violated New Jersey's law against cyberstalking and cyber-harassment, *N.J.S.A. 2C:33-4.1* and *18 U.S.C. § 875(c)* and been punishable by imprisonment in a federal or state penal institution.

21. Immediately after publishing his defamatory falsely sworn declaration with the email, McGibney republished same to his social media, where they both remain published and visible as of this writing.

22. McGibney actively publishes to his social media defamatory statements that attribute criminality to Trainor and that Trainor has committed acts of moral turpitude that are inconsistent with his profession. In these publications, McGibney states he is the only person who has such knowledge, and that as a result of his efforts Trainor's disbarment is imminent.

23. There is not a single word of truth to McGibney's defamatory statements. First, since before he published his defamatory statements about Trainor, McGibney possessed evidence that proved the statements were false. Second, Trainor never told anyone that he received McGibney's email and letter; they were just filed for safekeeping, and not given another thought until McGibney published his defamatory falsely sworn declaration February 8, 2024.

24. On or about July 1, 2024, McGibney published further defamatory statements to his social media where he stated Trainor committed acts in furtherance of a second separate and additional criminal conspiracy in order to aid and abet an international fugitive escape the law.

25. McGibney then used his own defamatory statements about Trainor to report Trainor to the United States Marshall Service as a suspect in the second criminal conspiracy that

is aiding and abetting an international fugitive escape the law. Moreover, McGibney reported same to the New Jersey Office of the Attorney General, the Federal Bureau of Investigation ("FBI") and New Jersey State Bar Association and demanded these law enforcement agencies open a criminal investigation into Trainor for fabricated non-existent criminal conduct attributed to him solely by McGibney's own defamatory statements and defamatory social media publications.

26. McGibney continually republishes defamatory statements that attribute criminality and acts of moral turpitude to Trainor and sends them directly to the law school located in New Jersey that Trainor graduated from.

27. Upon information and belief, McGibney's publishes defamatory statements about Trainor in order to promote, sell, and/or benefit a television docuseries that he is involved with as either the host, producer, or in some other capacity for his own personal financial gain.

28. McGibney does not possess a single piece of evidence or information that supports his defamatory statements about Trainor, because none exists, there was no conspiracy, it's all fabrication uttered in reckless disregard of their lack of truth.

## COUNT ONE

## Libel Per Se

29. Trainor repeats and re-alleges Paragraphs 1 through 28 as if they are fully set forth herein.

30. On February 8, 2024, McGibney knowingly published defamatory statements that said Trainor committed acts in furtherance of a criminal conspiracy that threatened and harassed a New Jersey process server and the company she worked for, and that Trainor committed a fraud upon the court.

31. McGibney re-published his defamatory statements about Trainor to his social media which have approximately 23,000 followers where the defamatory statements remain published and always accessible.

32. McGibney knew his statements about Trainor were defamatory when he published them, because before he published the defamatory statements he acquired and possessed video evidence that shows Trainor did not know the identity of the process server or the company she worked for, because the process sever did not identify herself or her company when she served Trainor.

33. Without knowledge of the identity of the process server or her company, Trainor could not have threatened or harassed her or her company by the emails and phones.

34. On July 1, 2024, McGibney published additional defamatory statements where he stated Trainor is a participant in a second additional criminal conspiracy that is aiding and abetting an international fugitive avoid capture.

35. McGibney acted with reckless disregard for the truth when he used his own knowingly defamatory statements about Trainor as evidence of a crime and reported Trainor to the United States Marshall Service, New Jersey Office of Attorney General, Federal Bureau of Investigation ("FBI"), and New Jersey State Bar Association and demanded they investigate Trainor as a criminal suspect and arrest Trainor for aiding and abetting an international fugitive.

36. McGibney republishes his defamatory statements that attribute criminality and acts of moral turpitude to Trainor on public social media pages and bulletin boards of the law school located in New Jersey that Trainor graduated from.

37. McGibney knowingly published defamatory statements about Trainor for his own personal financial gain in order to help him promote, sell, and/or benefit a television docuseries that he is involved with as either the host, producer, or in some other capacity.

WHEREFORE, Trainor, demands judgment against James McGibney a/k/a social media "@bullyville," and/or "@realbullyville," in an amount determined by the court plus interest, including, but not limited to, emotional distress, punitive damages, liquidated damages, statutory damages, attorneys' fees, costs, and for such other relief as the Court deems just and proper.

## COUNT TWO

## Defamation Per Se

38. Trainor repeats and re-alleges Paragraphs 1 through 37 as if they are fully set forth herein.

39. On February 8, 2024, McGibney knowingly published defamatory statements that stated Trainor committed acts in furtherance of a criminal conspiracy to threaten and harass a New Jersey process server and her company and committed a fraud upon the court.

40. McGibney knew his statements about Trainor were false when he published them, because before he published the defamatory statements he possessed video recorded evidence that proved the falsity of his statements when he published them.

41. McGibney re-publishes his defamatory statements about Trainor to his social media, where the defamatory statements remain published and visible.

42. On July 1, 2024, McGibney published defamatory statements about Trainor wherein he stated Trainor is participating in a second and additional criminal conspiracy that is aiding and abetting international fugitive escape the law.

9

43. McGibney acted with reckless disregard for the truth when he used his own knowingly defamatory statements about Trainor as evidence of a crime and reported Trainor to the United States Marshall Service, New Jersey Office of Attorney General, Federal Bureau of Investigation ("FBI"), and New Jersey State Bar Association and demanded they investigate Trainor as a criminal suspect and arrest him for aiding the international fugitive, which McGibney knows never happened.

44. McGibney republishes his defamatory statements that attribute criminality and acts of moral turpitude to Trainor on public social media pages of the law school located in New Jersey that Trainor graduated from.

45. McGibney knowingly published defamatory statements about Trainor for his own personal financial gain in order to help him promote, sell, and/or benefit a television docuseries that he is involved with as either the host, producer, or in some other capacity.

WHEREFORE, Trainor, demands judgment against James McGibney a/k/a social media "@bullyville," and/or "@realbullyville," in an amount determined by the court plus interest, including, but not limited to, emotional distress, punitive damages, liquidated damages, statutory damages, attorneys' fees, costs, and for such other relief as the Court deems just and proper.

## COUNT THREE

### Slander Per Se

46. Trainor repeats and re-alleges Paragraphs 1 through 45 as if they are fully set forth herein.

47. McGibney knowingly published defamatory statements about Trainor for his own personal financial gain in order to help him promote, sell, and/or benefit a television docuseries that he is involved with as either the host, producer, or in some other capacity.

48. McGibney knowingly published defamatory statements that stated Trainor committed acts in furtherance of a criminal conspiracy to threaten and harass a New Jersey process server and her company and committed a fraud upon the court.

49. McGibney knew his statements about Trainor were defamatory when he published them, because he possessed evidence that proved his statements were not true.

50. McGibney has repeatedly re-published his defamatory statements about Trainor to his social media.

51. McGibney published further defamatory statements about Trainor wherein he falsely stated Trainor is a participant in a second criminal conspiracy that is aiding and abetting an international fugitive avoid capture.

52. McGibney used his defamatory statements about Trainor to report him as a criminal suspect to the New Jersey Office of Attorney General, and the Federal Bureau of Investigation ("FBI"), United States Marshall Service, and New Jersey State Bar Association and demanded an investigation and arrest of Trainor.

53. McGibney republishes his defamatory statements that attribute criminality and acts of moral turpitude to Trainor on public social media pages of the law school located in New Jersey that Trainor graduated from.

54. McGibney knowingly published defamatory statements about Trainor for his own personal financial gain in order to help him promote, sell, and/or benefit a television docuseries that he is involved with as either the host, producer, or in some other capacity.

WHEREFORE, Trainor, demands judgment against James McGibney a/k/a social media "@bullyville," and/or "@realbullyville," in an amount determined by the court plus interest,

11

including, but not limited to, emotional distress, punitive damages, liquidated damages, statutory damages, attorneys' fees, costs, and for such other relief as the Court deems just and proper.

## COUNT FOUR

### Intentional Infliction of Emotional Distress

55. Trainor repeats and re-alleges Paragraphs 1 through 54 as if they are fully set forth herein.

56. On February 8, 2024, McGibney intentionally published a defamatory falsely sworn declaration where he said Trainor committed acts in furtherance of a criminal conspiracy to threaten and harass a New Jersey process server and her company which McGibney knew was not true.

57. Attached to McGibney's defamatory falsely sworn declaration, McGibney published the email he sent to Trainor where he falsely stated that Trainor committed acts of moral turpitude by committing a fraud upon the court.

58. McGibney knew his statements about Trainor were false when he published them, because he possessed video recorded evidence that proved his statements were false.

59. McGibney has repeatedly re-published his defamatory falsely sworn declaration about Trainor to his social media accounts which have approximately 23,000 followers.

60. McGibney published further defamatory statements about Trainor wherein he falsely stated Trainor participated in a second additional criminal conspiracy that is aiding and abetting an international fugitive avoid capture.

61. McGibney acted with reckless disregard for the truth when he used his own knowingly defamatory statements about Trainor as evidence of a crime and reported Trainor to the United States Marshall Service, New Jersey Office of Attorney General, Federal Bureau of

Investigation ("FBI"), and New Jersey State Bar Association and demanded they investigate Trainor as a criminal suspect and arrest him for aiding the international fugitive, which McGibney knows never happened.

62. McGibney republishes his defamatory statements that attribute criminality and acts of moral turpitude to Trainor on public social media pages of the law school located in New Jersey that Trainor graduated from.

WHEREFORE, Trainor, demands judgment against James McGibney a/k/a social media "@bullyville," and/or "@realbullyville," in an amount determined by the court plus interest, including, but not limited to, emotional distress, punitive damages, liquidated damages, statutory damages, attorneys' fees, costs, and for such other relief as the Court deems just and proper

## COUNT FIVE

### Trade Libel as to the Law Office of Patrick Trainor, Esq., LLC

63. Trainor repeats and re-alleges Paragraphs 1 through 62 as if they are fully set forth herein.

64. On February 8, 2024, McGibney knowingly published defamatory statements that said Trainor committed acts in furtherance of a criminal conspiracy that threatened and harassed a New Jersey process server and the company she worked for, and that Trainor committed a fraud upon the court.

65. McGibney re-published his defamatory statements about Trainor to his social media which have approximately 23,000 followers where the defamatory statements remain published and always accessible.

66. McGibney knew his statements about Trainor were defamatory when he published them, because before he published the defamatory statements he acquired and

13

possessed video evidence that shows Trainor did not know the identity of the process server or the company she worked for, because the process sever did not identify herself or her company when she served Trainor.

67. Without knowledge of the identity of the process server or her company, Trainor could not have threatened or harassed her or her company by the emails and phones.

68. On July 1, 2024, McGibney published additional defamatory statements where he stated Trainor is a participant in a second additional criminal conspiracy that is aiding and abetting an international fugitive avoid capture.

69. McGibney acted with reckless disregard for the truth when he used his own knowingly defamatory statements about Trainor as evidence of a crime and reported Trainor to the United States Marshall Service, New Jersey Office of Attorney General, Federal Bureau of Investigation ("FBI"), and New Jersey State Bar Association and demanded they investigate Trainor as a criminal suspect and arrest Trainor for aiding and abetting an international fugitive.

70. McGibney republishes his defamatory statements that attribute criminality and acts of moral turpitude to Trainor on public social media pages and bulletin boards of the law school located in New Jersey that Trainor graduated from.

71. McGibney knowingly published defamatory statements about Trainor for his own personal financial gain in order to help him promote, sell, and/or benefit a television docuseries that he is involved with as either the host, producer, or in some other capacity.

WHEREFORE, Trainor, demands judgment against James McGibney a/k/a social media "@bullyville," and/or "@realbullyville," in an amount determined by the court plus interest, including, but not limited to, emotional distress, punitive damages, liquidated damages, statutory damages, attorneys' fees, costs, and for such other relief as the Court deems just and proper

## JURY DEMAND

Plaintiff demands a trial by jury as to all issues so triable herein.

Dated: August 30, 2024

LAW OFFICE OF PATRICK TRAINOR, ESQ., LLC

_____
PATRICK TRAINOR
Patrick Trainor, Esquire (Attorney ID 242682019)
**Law Office of Patrick Trainor, Esq., LLC**
19 Union Avenue, Suite 201
Rutherford, New Jersey 07070
P: (201) 777-3327
F: (201) 896-7815
pt@ptesq.com

## CERTIFICATION

Pursuant to the requirements of L. Civ. R. 11.2, I, the undersigned, do hereby certify to the best of my knowledge, information, and belief, that except as hereinafter indicated, the subject matter of the controversy referred to in the within pleading is not the subject of any other cause of action, pending in any other Court, or of a pending Arbitration Proceeding.

I certify under penalty of perjury that the foregoing is true and correct.

LAW OFFICE OF PATRICK TRAINOR, ESQ., LLC

Dated: August 30, 2024

_____
PATRICK TRAINOR
*Attorney for Plaintiff*