**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| PATRICK TRAINOR; LAW OFFICE OF PATRICK TRAINOR, ESQ., LLC,<br><br>Plaintiff,<br><br>v.<br><br>JAMES McGIBNEY a/k/a INSTAGRAM ACCOUNT @bullyvile and X ACCOUNT @realbullyville;<br><br>Defendant. | CIVIL ACTION NO.: 2:24-cv-08873 |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Patrick Trainor, Esquire (Attorney ID 242682019)
**LAW OFFICE OF PATRICK TRAINOR, ESQ., LLC**
19 Union Avenue, Suite 201
Rutherford, New Jersey 07070
P: (201) 777-3327
F: (201) 896-7815
pt@ptesq.com
*Attorneys for Plaintiff*

Return Date: Monday, October 21, 2024

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........ 1

I. STANDARD OF REVIEW ........ 1

A. Specific Jurisdiction ........ 1

B. Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6) ........ 6

II. LEGAL ARGUMENT ........ 8

A. The Complaint Sufficiently Informed McGibney That He Is Being Sued In New Jersey Because He Expressly Aimed Libelous Statements Into New Jersey Intended To Harm Trainor In New Jersey ........ 8

B. Libelous Social Media Posts ........ 10

C. Fictitious Criminal Complaints ........ 11

III. CONCLUSION ........ 13

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 7, 8

*Biondi v. Nassimos*,
300 N.J. Super. 148 (App. Div. 1997) ........ 9

*Bristol-Myers Squibb Co. v. Superior Court*
582 U.S. 255 (2017) ........ 2, 4

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) ........ 4

*Calder v. Jones*,
465 U.S. 783 (1984) ........ *passim*

*Ciemniecki v. Parker McCay P.A.*,
Civ. No. 09-6450-RBK-KMW, 2010 U.S. Dist. LEXIS 55661 (D.N.J. Jun. 7, 2010) 9, 10

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) ........ 2, 4

*Dairy Stores, Inc. v. Sentinel Pub. Co.*,
104 N.J. 125 (1986) ........ 12

*Dijkstra v. Westerlink*,
168 N.J. Super. 128 (1979) ........ *passim*

*Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct.*,
592 U.S. 351 (2021) ........ *passim*

*Gertz v. Robert Welch, Inc.*,
418 U.S. 323 (1974) ........ 10

*Gillon v. Bernstein*,
218 F. Supp. 3d 285 (D.N.J. 2016) ........ 12

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011) ........ 2

*Grand Entm't Group, Ltd. v. Star Media Sales, Inc.*,
988 F.2d 476 (3d Cir. 1993)........................................................................ 3, 5

*Hasson v. FullStory, Inc.*,
2024 U.S. Dist. LEXIS 22552, 114 F.4th 181 (3d Cir. Sep. 5, 2024) ........................ 4, 5

*Hepp v. Facebook*,
14 F.4th 204 (3d Cir. 2021) ........................................................................ 5, 13

*Insurance Corp. of Ire. Ltd. v. Compagnie des Bauxites de Guinee*,
456 U.S. 694 (1982)........................................................................ 6

*IMO Indus. v. Kiekert AG*,
155 F.3d 254 (3d Cir. 1998)........................................................................ *passim*

*J. McIntyre Mach., Ltd. v. Nicastro*,
564 U.S. 873 (2011)........................................................................ 2

*Kyko Glob., Inc. v. Bhongir*,
807 F. App'x 148 (3d Cir. 2020) ........................................................................ 4

*Keeton v. Hustler Magazine, Inc.*,
465 U.S. 770, 780 (1984)........................................................................ 5

*Lawrence v. Bauer Publishing & Printing*,
89 N.J. 451 (1982) ........................................................................ *passim*

*Leang v. Jersey City Bd. of Educ.*,
198 N.J. 557 (2008) ........................................................................ 9

*O'Connor v. Sandy Lane Hotel Co.*,
496 F.3d 312 (3d Cir. 2007)........................................................................ *passim*

*Mangan v. Corporate Synergies Group*, Inc.,
834 F.Supp. 2d 199 (D.N.J. 2011) ........................................................................ 9

*Marten v. Goodwin*,
499 F.3d 290 (3d Cir. 2007)........................................................................ 4, 5

*Miller Yacht Sales, Inc. v. Smith*,
384 F.3d 93 (3d Cir. 2004)........................................................................ 2

*Phillips v. County of Allegheny*,
515 F.3d 224 (3d Cir. 2008)........................................................................ 7

*Pinker v. Roche Holdings, Ltd.*,

292 F.3d 361 (3d Cir. 2002) .......... 2

*Pitts v. Newark Bd. of Educ.*, 337 N.J. Super. 331 (App. Div. 2001) .......... 9

*Romaine v. Kallinger*, 109 N.J. 282 (1988) .......... 9

*Salzano v. North Jersey Media Group Inc.*, 201 N.J. 500 (2010) .......... 9, 10

*Senna v. Florimont*, 196 N.J. 469 (2008) .......... 10

*Shaw v. Bender*, 90 N.J.L. 147 (E.& A.1917) .......... 11

*Shuker v. Smith & Nephew, PLC*, 885 F.3d 760 (3d Cir. 2018) .......... 4

*Sokolay v. Edlin*, 65 N.J. Super. 112 (App. Div. 1961) .......... 10

*Toys "R" Us, Inc. v. Step Two, S.A.* 318 F.3d 446 (3d Cir. 2003) .......... 2, 3

*Walden v. Fiore,* 571 U.S. 277 (2014) .......... 3

*Ward v. Zelikowsky*, 136 N.J. 516 (1994) .......... 9

*Waste Management v. Admiral Ins. Co.,* 138 N.J. 106 (1993) .......... 6

**Other Authorities**

*Restatement (Second) of Torts, § 571* .......... 9

Fed. R. Civ. P. 8(a)(2) .......... 6

Fed. R. Civ. P. 12(b)(2) .......... 1

Fed. R. Civ. P. 12(b)(6) .......... 6, 7

N.J.S.A. 2C:33-4.1 .......... 11

18 U.S.C. § 875(c) ........................................................................................................ 1

**PRELIMINARY STATEMENT**

Defendant McGibney purposefully availed himself to this Court's jurisdiction through tortious contacts he deliberately directed into New Jersey in his efforts to leverage the laws of the State of New Jersey in order to harm Trainor. McGibney and Trainor are strangers they have no prior or current business or personal relationship, but over the last approximate eighteen (18) months McGibney has repeatedly published libelous statements about Trainor to his social media that he knows to be false. McGibney then used his own libelous statements as the basis of complaints he filed against Trainor with New Jersey law enforcement agencies, the FBI based in New Jersey, and the United States Marshall for the District of New Jersey where he claims Trainor is a co-conspirator in two separate criminal conspiracies, one of which was completed in Newark, New Jersey. At the same time, using his own libelous statements, McGibney filed complaints with the New Jersey Bar Association wherein he falsely states that Trainor serially commits acts of moral turpitude, in order to, as he says to cause Trainor to lose his "bar card" and that Trainor's disbarment is imminent.

McGibney directed his tortious contacts at New Jersey law enforcement agencies and the New Jersey Bar Association, as opposed to same in Florida or Texas, because he intended to harm Trainor where he can only be harmed, which is in the State of New Jersey.

**I. STANDARD OF REVIEW**

**A. Specific Jurisdiction**

Although not stated in his brief, it is believed that one of McGibney's arguments for dismissal is for lack of personal jurisdiction pursuant to *Rule 12(b)(2)* of the *Federal Rules of Civil Procedure*. This is a court sitting in diversity and a district court sitting in diversity may assert personal jurisdiction over a nonresident defendant to the extent allowed under the law of

the forum state. This District's courts have recognized that New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution. *Miller Yacht Sales, Inc. v. Smith,* 384 F.3d 93, 96 (3d Cir. 2004).

The plaintiff bears the burden of demonstrating facts that support personal jurisdiction, however, it is well established that when deciding a motion to dismiss for lack of jurisdiction, a court is required to accept plaintiff's allegations as true, and is to construe disputed facts in favor of the plaintiff. *Pinker v. Roche Holdings, Ltd*., 292 F.3d 361, 368 (3d Cir. 2002). Without the benefit of jurisdiction discovery, a plaintiff need only establish "a prima facie case of personal jurisdiction," and the courts are to assist plaintiff in proving jurisdiction. *Toys "R" Us, Inc. v. Step Two, S.A*. 318 F.3d 446, 451 (3d Cir. 2003).

The Supreme Court has defined two categories of personal jurisdiction: general jurisdiction and specific jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). General jurisdiction is usually applied to corporate defendants not individuals, and a court may assert general jurisdiction over a party when the party's affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Specific jurisdiction exists over a non-resident defendant who has taken "some act by which it purposefully avails itself of the privilege of conducting activities within the forum State" or has "purposefully directed its conduct into the forum state." *Bristol-Myers Squibb Co. v. Superior Court,* 582 U.S. 255, 272 (2017) (*quoting J. McIntyre Mach., Ltd. v. Nicastro,* 564 U.S. 873, 880 (2011)).

To determine whether it can exercise personal jurisdiction over a defendant, a federal court sitting in diversity must undertake a two-step inquiry by applying the State's long-arm statute to see if it permits the exercise of personal jurisdiction; then, the court must apply the

precepts of the Due Process Clause of the Constitution. In New Jersey, this inquiry is collapsed into a single step because New Jersey's long-arm statute permits the exercise of personal jurisdiction to the fullest limits of due process. *IMO Indus. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998). Accordingly, plaintiff establishes the court has personal jurisdiction over a defendant who "has certain minimum contacts" with New Jersey, "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007). The "existence of minimum contacts makes jurisdiction presumptively constitutional, and the defendant must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id at 324*.

Minimum contacts has been defined as some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. *Toys "R" Us,* 318 F.3d at, 451. The defendant's minimum contacts with the forum must be by his "own choice and not random, isolated, or fortuitous," and must show that defendant deliberately reached out beyond its home. *Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct*., 592 U.S. 351, 359 (2021) (*quoting Walden v. Fiore,* 571 U.S. 277, 285-287 (2014)). Defendant's minimum contacts with the forum State must be such that he should reasonably anticipate being haled into court in the forum State. *Grand Entm't Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 481 (3d Cir. 1993). A non-resident defendant who undertakes an intentional act that is calculated to create an actionable event in a forum state gives that state jurisdiction over the actor. *Calder v. Jones,* 465 U.S. 783, 791 (1984).

Here the Court has specific jurisdiction over McGibney. To determine specific jurisdiction the courts apply two tests: (1) the traditional "purposeful availment" test. *Burger King,* 471 U.S. 462, 474 (1985); and (2) the "effects test" set forth in *Calder v. Jones*, 465 U.S.

783, 787 (1984). Under the traditional test the plaintiff must show that the "defendant purposefully availed itself of the privilege of conducting activities" in the forum state and that his claims "arise out of or relate to the defendant's contacts with the forum." *Hasson v. FullStory, Inc.*, 2024 U.S. Dist. LEXIS 22552 *20, 114 F.4th 181 (3d Cir. Sep. 5, 2024) (*citing Ford Motor,* 592 U.S. at 364). Under the Third Circuit's *Calder* "effects" test, a plaintiff must show: (1) that the defendant committed an intentional tort, (2) the plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm, and (3) the defendant "expressly aimed" its allegedly tortious conduct at New Jersey. *Marten v. Goodwin*, 499 F.3d 290, 297 (3d Cir. 2007) (*citing IMO Indus., v. Kiekert AG*, 155 F.3d 254, 265-266 (3d Cir. 1998). The Third Circuit has traditionally applied the effects test to intentional torts. *Kyko Glob., Inc. v. Bhongir*, 807 F. App'x 148, 152 (3d Cir. 2020).

A defendant needn't physically enter the forum in order for the court to exercise specific jurisdiction, under this "Circuit's requirement of purposeful availment: what is necessary is a deliberate targeting of the forum." *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 780 (3d Cir. 2018) (*quoting O'Connor,* 493 F.3d at 317). Specific jurisdiction may be appropriate even with respect to a defendant's single or occasional acts, if the cause of action is one relating to that in-state activity. *Daimler AG v. Bauman,* 571 U.S. at 127. What is needed is for specific jurisdiction is some connection between the forum and the specific claims at issue. *Bristol-Myers,* 582 U.S. at 265. Moreover, "[j]urisdiction is proper when the state of a plaintiff's residence is the focus of the activities of the defendant out of which the suit arises." *Marten v. Godwin*, 499 F.3d 770, 780 (*quoting Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780 (1984)).

Under the effects test the plaintiff must first point to specific activity which demonstrate that the defendant expressly aimed its tortious conduct at the forum.. *IMO Indus.*, 155 F.3d at 266. The courts have found express aiming element of the effects test was satisfied where online content "bear[s] a particular nexus to [the] forum [or is] location-specific." *Hasson*, 2024 U.S. Dist. LEXIS 22552 *14 (3d Cir. Sep. 5, 2024). In *Calder*, the Supreme Court found California courts had jurisdiction over a Florida based reporter and editor of a libelous article about an entertainer in California, because the magazine was sold in California and the reporter and editor "knew [it] would have a potentially devastating impact upon" the entertainer who would suffer the greatest degree of harm in California. *Calder v. Jones*, 465 U.S.at 789-91. In *Grand Entm't* jurisdiction was proper over a foreign defendant who sent mail and telephone communications into the forum to negotiate a contract purposefully availed himself to the court's jurisdiction. *Grand Entm't,* 988 F.2d at 482. In *O'Connor*, the Third Circuit found that it had specific jurisdiction over a luxury spa located in Barbados in a personal injury action filed by a Pennsylvania resident injured at the luxury spa, because the spa sent seasonal mailings to the plaintiff's Pennsylvania to solicit business, and the plaintiff would not have purchased the spa services had he not received those mailings. *O'Connor*, 496 U.S. 312.

There is a "strong relationship among [McGibney], the forum, and this litigation," because McGibney deliberately reached into New Jersey with libelous statements and fictitious complaints to law enforcement, such that second prong claims must arise out of defendant's conduct is satisfied. *Hepp v. Facebook,* 14 F.4th 204, 207-08 (3d Cir. 2021). Here, McGibney deliberately targeted New Jersey and sought to benefit from New Jersey's laws by using libelous statements as the basis of fictitious complaints he filed against Trainor with New Jersey law enforcement agencies, federal law enforcement agencies based in. *Complaint* ("Compl.") ¶¶ 24-

26, ECF No. 1. *See* Just one of McGibney's many complaints to the New Jersey Attorney General, FBI, U.S. Marshall's and the New Jersey Bar Association dated on or about July 1, 2024, annexed hereto as **Exhibit B**. Similar claims were sent to the New Jersey Bar Association that he has knowledge of Trainor's actions that are incompatible with his profession. *Id.*

Finally, a court has personal jurisdiction over a non-resident defendant who has constructively consented to personal jurisdiction through voluntary use of certain procedures of the state. *Waste Management v. Admiral Ins. Co., 138 N.J. 106, 126 (1993)* (*citing Insurance Corp. of Ire. Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 704 (1982)). For example, McGibney consented to the court's jurisdiction when he invoked the protections and benefits of New Jersey's laws on January 16, 2024, when he utilized a New Jersey process server to personally serve Trainor a demand letter in connection with an alleged civil action that he filed in New Jersey known as *James McGibney v. Attorney Patrick Trainor*. Compl. ¶ 16. A copy of the Process Server's Affidavit of Service that identifies the civil action with attachments is annexed hereto as **Exhibit A**, Bates Numbered EXA001-011. *See* EXA07-008. *See also* Compl. ¶ 19. The complete image below is at EXA009.

TUESDAY, JANUARY 16TH 2024

| | |
|---|---|
| JAMES MCGIBNEY, | Plaintiff(s) – Petitioner(s) |
| V. | CIVIL CASE NO.: 2:23-cv-00340 |
| ATTORNEY PATRICK TRAINOR, | Defendant(s) – Respondent(s) |

STATE OF NEW JERSEY
COUNTY OF ESSEX ss.:

**Anabela Pinto,** the undersigned, being duly sworn, deposes and says that I was at the time of service over the age of 18 years and not a party to this action.

On **01/16/2024** at **12:10 PM,** I served a true copy of a **LETTER TO: ATTORNEY PATRICK TRAINOR** upon **ATTORNEY PATRICK TRAINOR** at **19 UNION AVE, RUTHERFORD, NJ 07070** in the manner indicated below:

### B. Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6)

Under *Rule 8(a)(2)* a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice" of the

claims against him. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In *Twombly*, the Supreme Court set forth the "plausibility" standard for overcoming a motion to dismiss and refined this approach in *Iqbal*. The plausibility standard requires the complaint to allege "only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Iqbal,* 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 556).

The standard set forth in *Twombly* "does not impose a probability requirement at the pleading stage…but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). When reviewing a motion to dismiss under *Rule 12(b)(6)* a court is required to "accept as true all plausible allegations contained in the complaint" and draw all reasonable inferences in plaintiff's favor. *Twombly,* 550 U.S. at 555.

Under *Twombly* and *Iqbal*, only legal conclusions are discounted, and even outlandish allegations are entitled to a presumption of truth, unless they are merely "formulaic recitation of the elements." *Iqbal, 556 U.S. at 678*. To determine the sufficiency of a complaint under *Twombly* and *Iqbal*, a court begins by "taking note of the elements a plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675. Next, a court should identify allegations that "are no more than conclusions," because they "are not entitled to the assumption of truth." *Id. at 679*. Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* A complaint "has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

## II. LEGAL ARGUMENT

### A. The Complaint Sufficiently Informed McGibney That He Is Being Sued In New Jersey Because He Expressly Aimed Libelous Contacts Into New Jersey To Harm Trainor In New Jersey

Social media is a cesspool and McGibney is one of its biggest floaters. At some point in 2023, McGibney began posting libelous social media posts wherein he stated that he alone possesses information that proves Trainor serially commits acts of moral turpitude, such that Trainor's disbarment is imminent and that he will shortly possess Trainor's "bar card." Compl. ¶¶ 10-12, 22. Apparently not satisfied with libelous social media posts, McGibney, as the complainant used his own libelous statements to file complaints against Trainor with New Jersey law enforcement agencies and federal law enforcement agencies based in New Jersey where he said Trainor participated in two separate criminal conspiracies. Compl. ¶¶ 24-25. In the first alleged criminal conspiracy, McGibney claims Trainor conspired to threaten and harass a Newark, New Jersey based process server and her company, and in the second alleged criminal conspiracy, McGibney stated Trainor is aiding and abetting an international fugitive evade capture. Compl. ¶¶ 15-22, 24-28.

As for the first alleged conspiracy, McGibney knows his statements concerning same are false, because before he published the libelous statements he purchased the process server's body worn video camera recording of Trainor actually being served which proves the falsity of his statements, but he disregarded the information on the video to publish libelous statement that Trainor was involved in the first alleged criminal conspiracy. Compl. ¶¶ 16-17. The allegations

concerning the second criminal conspiracy are nothing more than fabricated self-aggrandizing fantasy.

To establish defamation under New Jersey law, a plaintiff must show that the defendant: (1) made a false and defamatory statement concerning plaintiff; (2) communicated the statement to a third party; and (3) had a sufficient degree of its fault. *Mangan v. Corporate Synergies Group*, Inc., 834 F. Supp. 2d 199, 204 (D.N.J. 2011). Whether statements are susceptible of a defamatory meaning is a question of law for the court, where the court considers the content, verifiability, and context of the challenged statements. *Ward v. Zelikowsky*, 136 N.J. 516, 529 (1994). Only when the court finds the words to be capable of both a defamatory and a nondefamatory meaning does a question of fact arise for the jury. *Lawrence v. Bauer Publishing & Printing,* 89 N.J. 451, 459 (1982). In general, words that subject a person to ridicule or contempt, or that clearly sound to the disreputation of an individual are defamatory on their face. *Leang v. Jersey City Bd. of Educ.*, 198 N.J. 557, 585 (2008).

However, certain kinds of statements denote such defamatory meaning that they are considered defamatory as a matter of law. The false attribution of criminality is a prime example of such a statement**.** *Ciemniecki v. Parker McCay P.A.*, Civ. No. 09-6450-RBK-KMW, 2010 U.S. Dist. LEXIS 55661 *26 (D.N.J. June 7, 2010) (*quoting Romaine v. Kallinger*, 109 N.J. 282, 291 (1988). New Jersey courts have adopted the Restatement's definition of slander per se:

> "One who publishes a slander that imputes to another conduct constituting a criminal offense is subject to liability to the other without proof of special harm if the offense imputed is of a type which, if committed in the place of publication, would be (a) punishable by imprisonment in a state or federal institution, or (b) regarded by public opinion as involving moral turpitude.
>
> *Restatement (Second) of Torts, § 571*. This section has been cited favorably by New Jersey Courts. *See Salzano v. North Jersey Media Group Inc.*, 993 201 N.J. 500, (2010); Biondi, 692 A.2d at 107; Pitts, 766 A.2d at 1210."

*Ciemeniecki v. Parker McCay, P.A.*, Civil No. 09-6450-RBK-KMW, 2010 U.S. Dist. LEXIS 55661 *31 (D.N.J. Jun. 7, 2010).

Historically, false accusations of a crime or false insinuations that one has committed a criminal act are considered to be different from other defamatory statements…[and] it is well established that such statements are actionable without proof of special damages, because they are regarded to be slander per se. *Salzano v. North Jersey Media Grp. Inc.*, 201 N.J. 500, 541 (2010). "Furthermore, one who falsely and without privilege to do so publishes a slander which ascribes to another conduct, characteristics or a condition incompatible with the proper conduct of his lawful business, trade, or profession is liable for slander per se." *Sokolay v. Edlin*, 65 N.J. Super. 112, 121-22 (App. Div. 1961). Moreover, Trainor is not a "public figure" who has achieved "pervasive fame or notoriety," nor is he a "limited public figure who voluntarily injected himself into or was drawn into a particular public controversy." *Senna v. Florimont*, 196 N.J. 469, 483 n.9 (2008) (*quoting Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974)).

**B. <u>Libelous Social Media Posts</u>**

McGibney repeatedly publishes libelous statements to his social media that he then cites as the basis of complaints he files with New Jersey law enforcement agencies and federal law enforcement agencies based in New Jersey, the New Jersey Bar Association, and Trainor's law school in New Jersey where he claims to have exclusive knowledge of Trainor's alleged misconduct that requires Trainor to be immediately disbarred. Compl. ¶ 22. *See also* **Exhibit B**. McGibney's statements are utterly false and he knows it, they are just self-aggrandizement intended to titillate his social media followers, and storyline for his television show.

To establish the defamatory nature of the social media posts it is not necessary for plaintiff to prove that defendants had accused them of the commission of a crime. Words that clearly sound to the disreputation of an individual are defamatory on their face. *Bauer*

*Publishing & Printing*, 89 N.J.at 459 (*citing Shaw v. Bender*, 90 N.J.L. 147 (E.& A.1917)). The actual naming of plaintiff is not a necessary element in an action for libel. It is enough that there is such reference to him that those who read or hear the libel reasonably understand the plaintiff to be the person intended. *Dijkstra v. Westerlink*, 168 N.J. Super. 128, 133 (1979).

McGibney's statements are per se libel. On February 8, 2024, McGibney published to his social media the falsely sworn declaration that he filed in an unrelated action where he stated Trainor committed a fraud upon the court, and further falsely stated that on February 6, 2024, Trainor participated in a criminal conspiracy in Newark, New Jersey, that threatened and harassed the process server who served Trainor and her company, whereby if true, it violated State and federal cyberstalking statutes *N.J.S.A. 2C:33-4.1* and *18 U.S.C. § 875(c)*. *See* Compl. ¶¶ 16-21. *See also* EXA009. But McGibney knew his statements about Trainor were false when he made them, because he knew Trainor could not have threatened and harassed the process server or her company. McGibney purchased a video recording of Trainor's actual service that was recorded by the process server's body worn camera which shows Trainor did not know the identity of the process server or her company in order to harass her, because the process server did not identify herself or her company. Compl. ¶¶ 15-20. After serving Trainor, McGibney posted photographs and the video of Trainor being served to his social media as alleged support for his libelous statements that by his actions Trainor was to be disbarred.

**C. Fictitious Criminal Complaints**

At some point on or before July 1, 2024, McGibney as the complainant, filed complaints against Trainor with the New Jersey Office of Attorney General, FBI located in New Jersey, and the U.S. Marshall's in Newark, wherein he complained that in addition to being a participant in the first criminal conspiracy, Trainor was a conspirator in a separate second criminal conspiracy

to aid and abet an international fugitive evade capture. Compl. ¶¶ 24-26. Thereafter, McGibney published same to his social media. *See* Exhibit B. McGibney knows these ridiculous allegations are false, but he disregarded the truth, because has determined that they will benefit him by helping him promote a television show he is involved with. Compl. ¶ 27.

The fictitious criminal complaints McGibney filed against Trainor are libelous per se statements that are not privileged communications with law enforcement. *See* Exhibit B. New Jersey recognizes that an absolute privilege exists for defamatory statements made during the course of "judicial, legislative, or administrative proceedings are absolutely privileged because the need for unfettered expression is crucial to the public weal. *Dairy Stores, Inc. v. Sentinel Pub. Co.*, 104 N.J. 125, 136 (1986). However, New Jersey only recognizes a qualified privilege for statements made to authorities to prevent and detect crime. *Dijkstra,* 168 N.J. Super. at 134-36. The qualified privilege is overcome by showing that the statements were made with actual malice. *Id.* at 136. Malice means the statements were written with reckless disregard for the truth or falsity. *Gillon v. Bernstein*, 218 F. Supp. 3d 285, 297 (D.N.J. 2016). Reckless disregard in this context refers to the publishing of defamatory statements with a high degree of awareness of their probable falsity. *Bauer Publishing & Printing*, 89 N.J. at 466.

Here, McGibney statements concerning Trainor's involvement in a criminal conspiracy to threaten and harass the process server and her company were made with malice, because he recklessly disregarded the video recording that proved his statements false. Furthermore, stating that a plaintiff may be charged with criminal conduct diminishes their standing in the community and is little different from an assertion that plaintiffs have actually been charged with certain crimes, therefore, such statements are *libelous per se*, i.e., not susceptible of a nondefamatory interpretation." *Bauer Publishing & Printing*, 89 N.J. at 459-460.

McGibney's contacts with the forum are not generalized like the online consumer tracking software in *Hasson*, or *Hepp's* internet advertisements. Much like in *Ford Motor Co.*, where Ford systematically reached into the forum to serve foreign markets McGibney has strong contacts with the forum. McGibney systematically reached into New Jersey on multiple fronts: (1) by repeatedly publishing libelous statements about Trainor; (2) by using said libelous statements in fictitious complaints with law enforcement in New Jersey and the Bar Association; (3) by seeking to benefit from the laws of New Jersey when he personally served Trainor a demand letter in conjunction with an alleged civil action in New Jersey; and (4) by publishing the video of service upon Trainor as proof of his claim that he will soon have Trainor's bar card.

Further, McGibney consented to this court's jurisdiction when he filed his fictitious complaints, because by filing the complaints he anticipated being haled into New Jersey courts to testify or give statements of his knowledge of the alleged criminal matters and bar violations that he falsely accused Trainor of participating in. Any reasonable person, in McGibney's shoes would be grateful for this opportunity.

Lastly, jurisdiction is proper because it advances New Jersey's interest in protecting its citizens from the type of alleged criminal conspiracies that McGibney claims knowledge of Trainor's involvement in.

## III. CONCLUSION

For the foregoing reasons it is respectfully requested that defendants motion be denied.

Respectfully submitted,

Dated: October 5, 2024

Patrick Trainor