NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| PATRICK TRAINOR; LAW OFFICE OF PATRICK TRAINOR, ESQ., LLC, <br><br> Plaintiffs, <br> v. <br><br> JAMES MCGIBNEY a/k/a INSTAGRAM ACCOUNT @BULLYVILLE and X ACCOUNT @REALBULLYVILLE, <br><br> Defendant. | Civil Action No.: 2:24-08873 <br><br> **Opinion & Order** |

**CECCHI, District Judge.**

Defendant James McGibney ("Defendant") moves to dismiss (ECF No. 7, "MTD") the complaint (ECF No. 1, "Complaint") filed by plaintiffs Law Office of Patrick Trainor, Esq., LLC, and Patrick Trainor (collectively, "Plaintiffs") pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). Plaintiffs opposed the motion (ECF No. 8, "Pl. Opp.") and Defendant replied (ECF No. 9, "Def. Reply"). The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons set forth below, Defendant's motion is **GRANTED.**

  I.  **BACKGROUND**[1]

The present action arises from alleged defamatory conduct by Defendant McGibney (operating social media accounts @bullyville on Instagram and @realbullyville on X) against Plaintiffs. The dispute traces back to a separate federal lawsuit in the Middle District of Florida (the "Florida Action"), in which Trainor represents the plaintiff Couture. *See* Complaint ¶ 9

---

[1] For the purposes of this motion to dismiss, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to the Plaintiff. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

(referencing *Couture v. Noshirvan*, 23-cv-00340 (M.D. Flo., May 30, 2023)).[2] Plaintiff Trainor had no previous relationship with Defendant McGibney, who is not a party in the Florida Action. *See id.* ¶¶ 9, 11. Defendant McGibney, a Texas resident, allegedly made defamatory social media posts and complaints about Plaintiff Trainor in response to one of Trainor's filings in the Florida Action. *See id.* ¶ 13.

Specifically, McGibney allegedly began targeting Trainor online after Trainor served discovery requests on the defendant in the Florida Action seeking communications that allegedly involved McGibney. S*ee id.* In January 2024, McGibney allegedly emailed Trainor demanding that he withdraw those discovery requests in the Florida Action. *See id.* When Trainor refused, McGibney allegedly threatened to "inform the court that Trainor had committed a fraud upon the court." *Id.* ¶ 14. Shortly after, a process server allegedly delivered a physical copy of McGibney's email to Trainor at his New Jersey office, an event that McGibney allegedly had recorded via the server's body camera. *See id.* ¶¶ 15-16. The recording, according to the Complaint, shows that Trainor had no way of knowing the identity of the process server or her employer, which would undermine McGibney's later claim that Trainor was involved in a conspiracy to harass the server. *See id*. ¶¶ 17-18.

Despite this alleged video evidence, on February 8, 2024, McGibney allegedly filed a sworn declaration allegedly claiming that Trainor and a co-conspirator had threatened and harassed the process server in New Jersey, which would constitute violations of both state and federal criminal statutes. *See id*. ¶¶ 19-20.[3] McGibney also allegedly appended the earlier email to this declaration and then republished both the declaration and the email to his social media followers,

---

[2] Neither party attempts to introduce the underlying dispute of the Florida Action. Accordingly, the Court will not address it in this Opinion.
[3] The court notes that although context would suggest that this sworn declaration was filed in the Florida Action, Plaintiff does not explicitly make that clear in the Complaint.

2

which the Complaint states number around 23,000. *See id* ¶¶ 10, 21. McGibney also allegedly began posting on social media that Trainor's disbarment was imminent as a result of McGibney's efforts. *See id.* ¶ 22. The court notes that this description of the alleged social media posts is based on the Complaint's characterization of those posts. *See id.* The Complaint does not quote from those posts or attach any exhibits of them to the pleading.

Later, in July 2024, McGibney allegedly published further defamatory content, this time accusing Trainor of participating in a second "criminal conspiracy to aid and abet an international fugitive." *Id*. ¶ 24.[4] McGibney then allegedly used "his own defamatory statements" to report Trainor to multiple law enforcement and regulatory agencies, including the Federal Bureau of Investigation, the U.S. Marshals Service, the New Jersey State Bar Association, and the New Jersey Office of the Attorney General, calling on those entities to open criminal investigations into Trainor. *See id.* ¶ 25.

Plaintiff Trainor also alleges that McGibney "continually republishes defamatory statements that attribute criminality and acts of moral turpitude to Trainor and sends them directly to the law school located in New Jersey that Trainor graduated from." *See id.* ¶ 26. Although Plaintiffs later specify that these statements were published on "public social media pages and bulletin boards of the law school located in New Jersey that Trainor graduated from," Plaintiffs do not specify what acts of moral turpitude McGibney attributed to him or when he published those attributions. *See id.* ¶¶ 26, 36.

Trainor asserts that McGibney's motivations are at least in part financially driven. *See id.* ¶ 27. According to the Complaint, McGibney is involved in a television docuseries and has used defamatory statements about Trainor to promote the series. *See id.*

---

[4] Again, these alleged posts were not quoted or provided to the Court in the pleading, so discussion of those posts is based solely on the Complaint's summary and description of those posts.

3

Plaintiffs' Complaint asserts claims for (i) Libel Per Se, (ii) Defamation Per Se, (iii) Slander Per Se, (iv), Intentional Infliction of Emotional Distress, and (v) Trade Libel. *Id.* ¶¶ 29-71. Defendant moved to dismiss the Complaint, arguing that personal jurisdiction is lacking and that Plaintiffs have failed to state a claim because they have not adequately specified what the allegedly defamatory statements were. *See* MTD at 3, 5.

## II.     LEGAL STANDARD

### A.     Personal Jurisdiction

The Court must grant a defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) if the Court does not maintain personal jurisdiction over the defendant. Once a defendant challenges personal jurisdiction, the burden of establishing personal jurisdiction shifts to the plaintiff. *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 316 (3d Cir. 2007) (citations omitted). To demonstrate personal jurisdiction, the plaintiff may rely on the allegations in the complaint, affidavits, or other evidence. *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009). Where the court chooses not to conduct an evidentiary hearing, the plaintiff need only demonstrate a prima facie case of jurisdiction to defeat a motion to dismiss. *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992) (citations omitted). In deciding a motion to dismiss for lack of personal jurisdiction, the Court must "accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Id.*

### B.     Failure to State a Claim

To survive dismissal under Rule 12(b)(6), a complaint must meet the pleading requirements of Rule 8(a)(2) and "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In evaluating the sufficiency of a complaint, a court must "draw all reasonable inferences in favor of

4

the non-moving party." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (citation omitted). Ultimately, a complaint "that offers 'labels and conclusions' or . . . tenders 'naked assertions' devoid of 'further factual enhancement,'" will not withstand dismissal. *Iqbal*, 556 U.S. at 678 (citations and brackets omitted).

## III.    DISCUSSION

### A.    Personal Jurisdiction

When, as here, the claims at issue involve intentional torts, the Third Circuit applies the "effects test" as set forth in *Calder v. Jones*, 465 U.S. 783, 787 (1984). Under this "effects test," for specific jurisdiction Plaintiffs must show that: (1) Defendant committed an intentional tort; (2) Plaintiffs felt the brunt of the harm in New Jersey such that New Jersey can be said to be the focal point of the harm; and (3) Defendant expressly aimed his tortious conduct at New Jersey. *See Remick v. Manfredy*, 238 F.3d 248, 258 (3d Cir. 2001) (citing *Calder*, 465 U.S. at 787). Here, the second and third elements appear to be satisfied. Courts routinely hold that individuals endure the bulk of harm from torts like defamation in their home states. *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780 (1984); *Remick*, 238 F.3d at 258-59 (3d Cir. 2001) (holding that the plaintiff "may reasonably contend that he suffered the brunt of the harm in Pennsylvania," given that "defamation is an intentional tort and [his] professional activities are centered in Pennsylvania"). Accordingly, Plaintiffs have reasonably contended that they felt the brunt of the alleged harms in their home state of New Jersey. *See* Complaint ¶¶ 1-2. Defendant also specifically aimed his allegedly tortious conduct at the State of New Jersey by directing the allegedly defamatory statements to the New Jersey State Bar Association, the New Jersey Office of the Attorney General, a New Jersey law school, and several other federal entities with offices in New Jersey. *Id.* ¶ 25. However, Plaintiffs have not provided the court sufficient information to find that

the first element is satisfied because, as discussed below, Plaintiffs have failed to plead sufficient details about the allegedly defamatory statements—and thus failed to properly state a claim for an intentional tort.

### B. Plaintiffs Have Failed to State a Claim

Although the Complaint asserts five different causes of action, each with their own elements, all of these causes of action are predicated on the same alleged conduct—Defendant's allegedly "defamatory statements." *See* Complaint ¶¶ 29-71. Accordingly, if, as Defendant argues, Plaintiffs have failed to sufficiently plead what these allegedly "defamatory statements" were, then all of the claims in the Complaint must fail. *See* MTD at 4-6. As discussed further below, the Court finds that Plaintiff has not sufficiently pleaded specific facts about the statements at issue.

Under New Jersey law, the elements of defamation are: "(1) that defendants made a false and defamatory statement concerning [plaintiff]; (2) that the statement was communicated to another person (and not privileged); and (3) that defendants acted negligently or with actual malice." *G.D. v. Kenny*, 15 A.3d 300, 310 (N.J. 2011). Plaintiffs' Complaint fails to sufficiently plead a claim of defamation because Plaintiffs do "not identify the specific allegedly defamatory statements" that were purportedly published to social media. *See Zoneraich v. Overlook Hosp.*, 514 A.2d 53, 63 (N.J. Super. Ct. App. Div.) ("In the case of a complaint charging defamation, plaintiff must plead facts sufficient to identify the defamatory words, their utterer and the fact of their publication."), cert. denied, 501 A.2d 945 (N.J. 1986); *see also F.D.I.C. v. Bathgate*, 27 F.3d 850, 875 (3d Cir. 1994) (citing *Zoneraich*); *see also Kerrigan v. Otsuka Am. Pharm., Inc.*, 2012 WL 5380663, at *5 (E.D. Pa. Nov. 1, 2012) ("The plaintiff's complaint fails to state a cause of action for defamation because it does not identify any specific, defamatory statements.").[5]

---

[5] Libel and slander are both forms of defamation, so they both also require that plaintiff plead what the allegedly defamatory statements were with specificity. *See Lamplugh v. PBF Energy*, 2020 WL 434204, at

6

Here, instead of identifying the specific defamatory words, Plaintiffs repeatedly make conclusory allegations that Defendant made defamatory statements. Plaintiffs have sometimes provided the Court with the general topics of the alleged statements, but not the actual statements themselves.[6] For instance, Plaintiffs allege that Defendant made defamatory statements on social media that Trainor committed criminal acts in furtherance of criminal conspiracy "to aid and abet an international fugitive escape the law." Complaint ¶ 24. Plaintiffs do not allege when these statements were made, what the criminal acts were, who the alleged international fugitive was, nor do they quote any alleged statement. *See id.* Similarly, Plaintiffs allege that Defendant "continually republished defamatory statements" that allegedly "attribute criminality and acts of moral turpitude" to Trainor. *Id.* ¶ 26. Again, Plaintiffs do not specify what the actual statements were, when they were made, or what type of behavior was referred to in the statements. Plaintiffs provide the Court with no specifics to establish what the allegedly defamatory statements actually were. *See Shoul v. Select Rehab., LLC*, No. 1:21-CV-00836, 2022 WL 2118322 at *9, (M.D. Pa. June 13, 2022) (noting that a plaintiff alleging defamation must state the source and substance of the communication at issue, as well as the date and circumstances under which specific statements were made).

Plaintiffs argue that their allegations have provided Defendant with enough notice to understand the "allegations made against him." S*ee Cristelli v. Filomena II, Inc.,* 1999 WL 1081290, at *3 (D.N.J. Dec. 1999). But Plaintiffs have not indicated what the specific language at

---

*5 (D. Del. Jan. 28, 2020) ("Defamation consists of the 'twin torts' of libel (written defamation) and slander (spoken defamation).").

[6] The Court notes that Plaintiffs provided the Court with one of the alleged defamatory statements as Exhibit B to their memorandum of law in opposition to Defendant's Motion to Dismiss. But the Court does not consider this as an amendment to the pleading because Plaintiffs' "complaint may not be amended by the briefs in opposition to a motion to dismiss." *Dickerson v. N.J. Inst. of Tech.*, No. 19-8344, 2019 WL 6032378, at *6 n.4 (D.N.J. Nov. 14, 2019) (citations omitted).

issue is and when the alleged posts were published. As such, Plaintiffs' allegations are not enough to provide notice as to which statements are at issue in this case. *See Zoneraich v. Overlook Hosp.*, 514 A.2d 53, 63 (N.J. Super. Ct. App. Div.).

## IV.   CONCLUSION

For these reasons, the Court will dismiss Plaintiffs' claims without prejudice. If Plaintiffs file an amended complaint, they should "allege specific defamatory statements, when and by whom they were published, to whom they were published," and facts suggesting the intent of the publication. *Winters v. New Jersey*, No. CV 17-3530, 2018 WL 1665929, at *4 (D.N.J. Apr. 6, 2018).

Accordingly, **IT IS** on this 25th day of April, 2025,

**ORDERED** that Defendant's motion to dismiss (ECF No. 7) is granted, and Plaintiffs' Complaint (ECF No. 1) is dismissed without prejudice; and it is further

**ORDERED** that Plaintiffs shall have thirty (30) days from entry of this Order to submit an amended complaint that addresses the deficiencies identified in this Opinion. Insofar as Plaintiffs submit a further amended complaint, they shall also provide a form of the amended complaint that indicates in what respect it differs from the current Complaint, by bracketing or striking through materials to be deleted and underlining materials to be added. *See* L. Civ. R. 15(a)(2).

   **SO ORDERED.**

*/s/ Claire C. Cecchi*
**CLAIRE C. CECCHI, U.S.D.J.**