NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PATRICK TRAINOR; LAW OFFICE OF PATRICK TRAINOR, ESQ., LLC,<br><br>                  Plaintiffs,<br>    v.<br><br>JAMES MCGIBNEY a/k/a INSTAGRAM ACCOUNT @BULLYVILLE and X ACCOUNT @REALBULLYVILLE,<br><br>                  Defendant. | Civil Action No.: 24-8873<br><br>**OPINION & ORDER** |

**CECCHI, District Judge.**

Before the Court is defendant James McGibney's ("McGibney") motion to dismiss (ECF No. 24; *see also* ECF No. 24-1 ("Br.")) the first amended complaint filed by plaintiffs Patrick Trainor ("Trainor") and the Law Office of Patrick Trainor, Esq., LLC (collectively, "Plaintiffs"). ECF No. 22 ("FAC"). Plaintiffs opposed the motion (ECF No. 25 ("Opp.")), and Defendant replied. ECF No. 28 ("Reply"). The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons set forth below, Defendant's motion is denied.

**I.    BACKGROUND**[1]

    **A.    Factual History**

This action arises from alleged defamatory statements made by McGibney (operating social media accounts @bullyville on Instagram and @realbullyville on X) against Trainor. FAC ¶ 3. Trainor, an attorney based in New Jersey, represented the plaintiff in a civil action in the

---

[1] The following facts are accepted as true for the purposes of the motion to dismiss.

1

United States District Court for the Middle District of Florida (the "Florida Action"). *Id.* ¶¶ 2, 10 (citing *Couture v. Noshirvan*, No. 23-340 (M.D. Fla. May 30, 2023)). Although McGibney was not a party to the Florida Action, the alleged issues between him and Trainor stem from that lawsuit. *Id.* ¶¶ 10, 14.

Specifically, McGibney, a resident of Texas, allegedly began targeting Trainor online after Trainor served discovery requests on the defendant in the Florida Action seeking communications that involved McGibney. *Id.* ¶¶ 3, 13–14. In January 2024, McGibney emailed Trainor demanding that he withdraw those discovery requests. *Id.* ¶ 14. When Trainor refused, McGibney allegedly threatened to "inform the court that Trainor committed a fraud upon the court." *Id.* Shortly thereafter, a process server delivered a physical copy of McGibney's email to Trainor at his New Jersey office, an encounter that Trainor asserts was recorded via the server's body camera. *Id.* ¶¶ 16–17. The recording, which McGibney received, allegedly shows that Trainor had no way of knowing the identity of the process server or her employer. *Id.* ¶¶ 17–18. Trainor further asserts that the "process server simply served [him a copy of] McGibney's [email] and exited." *Id.* ¶ 18. McGibney, for his part, contends that Trainor and/or an associate of his harassed the process server. *See* Reply at 7–8.[2]

Following the service of this document, Plaintiffs allege that McGibney made numerous defamatory statements about Trainor. On February 8, 2024, McGibney submitted a sworn declaration in the Florida Action stating that Trainor had committed a fraud upon the court by knowingly filing documents with false statements, and that Trainor had conspired with a convicted felon and fugitive to "threaten and harass" the process server. FAC ¶¶ 20–21. Beyond this court filing, Plaintiffs assert that McGibney posted on various social media accounts a slew of similarly

---

[2] The Court may only consider, however, facts from the pleadings for the purposes of deciding this motion. *See Raritan Baykeeper, Inc. v. NL Indus., Inc.*, No. 09-4117, 2013 WL 103880, at *14 (D.N.J. Jan. 8, 2013).

defamatory messages about Trainor. On several occasions, McGibney accused Trainor of unethical conduct in both the Florida Action and the instant case:

- On February 18, 2024, McGibney posted that Trainor's legal filings in the Florida Action contained gross misrepresentations that were an "insult to the entire judicial process" and claimed to have proof of Trainor's misconduct. *Id.* ¶ 22.

- On June 28, 2024, McGibney accused Trainor of unethical conduct in a social media post and stated that he was "going to get [Trainor] disbarred" based on the information in McGibney's possession. *Id.* ¶ 23 (alteration in original). McGibney posted a similar message on the following day, June 29, 2024. *Id.* ¶ 24.

- On July 1, 2024, McGibney posted that Trainor lied in a legal filing. *Id.* ¶ 25.

- On September 2 and 7, 2024, McGibney posted that Trainor made false statements in the initial complaint in this matter and that Trainor "continues to be unbelievably dishonest by filing absolutely provable lies with a Federal Case." *Id.* ¶¶ 33–34.

Plaintiffs also allege that McGibney repeatedly accused Trainor of criminal acts:

- On July 1, 2024, McGibney posted that Trainor was providing financial assistance to a "convicted felon and fugitive on the run in Mexico," which formed the basis of a bar complaint filed by McGibney against Trainor. *Id.* ¶ 25. McGibney directed this post to the New Jersey Bar Association, the New Jersey Office of the Attorney General, and the U.S. Marshal's Service. *Id.* ¶ 26. He added that statements in the post were in addition to the "correspondence via email" that he previously sent to the U.S. Marshal's Service. *Id.*

- In a second post on July 1, 2024, McGibney stated that he had evidence that Trainor conspired with a "convicted felon" to threaten and harass the process server, and that Trainor's disbarment was imminent. *Id.* ¶ 27.

- On July 6, 2024, McGibney posted that Trainor was "petrified of . . . documents (and images) shared with [a] convicted felon and PEDOPHILE" being made public. *Id.* ¶ 28. He added "[e]xactly what did you share with that PEDOPHILE" and told Trainor to start "focusing on potential criminal charges heading [his] way" and that McGibney was "the reason why [Trainor] was going to be disbarred." *Id.* (alteration in original).

3

- On July 9, 2024, McGibney posted that Trainor was "working in conjunction with [a] convicted felon and PEDOPHILE" and that McGibney was going to get Trainor disbarred. *Id.* ¶ 29.

- On August 12, 2024, McGibney posted that Trainor had acted unethically and accused him of participating in a criminal conspiracy that included a "pedophile pal." *Id.* ¶ 30. McGibney made a similar post on August 27, 2024. *Id.* ¶ 31. McGibney subsequently posted several statements on August 31, September 8, September 15, and September 20, 2024, accusing McGibney of participating in a criminal conspiracy and/or involvement with a "convicted felon." *Id.* ¶¶ 32, 35–38. Two of these posts were directed to the Department of Justice and U.S. Marshal's Service. *Id.* ¶¶ 35–36.

Plaintiffs assert that McGibney knew the statements were false, including the statements related to the encounter with the process server because the process server was wearing a body camera during the encounter. *Id.* ¶ 44.

Plaintiffs allege that these statements remain posted on McGibney's social media accounts and are visible to McGibney's approximately 23,000 followers. *Id.* ¶¶ 11, 39. As a result of these posts, Plaintiffs assert that some of McGibney's social media followers have directed "harassing and threatening calls and emails to Trainor's office." *Id.* ¶ 13. They further assert that despite McGibney's repeated accusations against Trainor, McGibney "was and is a complete stranger to Trainor" and that "they had no prior or current acquaintance or relationship." *Id.* ¶ 12.

### B.   Procedural History

Plaintiffs filed their initial complaint in August 2024. ECF No. 1. In April 2025, the Court granted Defendant's motion to dismiss, finding that Plaintiffs had not sufficiently pled any alleged defamatory statement. ECF No. 20 at 6–8. Specifically, Plaintiffs had not provided the dates of, or actual quotes from, any particular statement. *Id.* The Court thus concluded that Plaintiffs had failed to state a claim on any count in the complaint. *Id.*

The Court granted Plaintiffs leave to amend, and they filed the FAC. Plaintiffs now raise three claims: (1) libel per se, (2) defamation per se, and (3) slander per se. FAC ¶¶ 40–59. Defendant moves to dismiss for lack of personal jurisdiction and for failure to state a claim. ECF No. 24.

## II. LEGAL STANDARD

### A. Personal Jurisdiction

The Court must grant a defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) if the Court does not maintain personal jurisdiction over the defendant. Once a defendant challenges personal jurisdiction, the burden of establishing personal jurisdiction shifts to the plaintiff. *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 316 (3d Cir. 2007) (citations omitted). To demonstrate personal jurisdiction, the plaintiff may rely on the allegations in the complaint, affidavits, or other evidence. *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (citations omitted). Where the court chooses not to conduct an evidentiary hearing, the plaintiff need only demonstrate a prima facie case of jurisdiction to defeat a motion to dismiss. *Id.* (citation omitted). In deciding a motion to dismiss for lack of personal jurisdiction, the Court must "accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992) (citations omitted).

### B. Failure to State a Claim

To survive dismissal under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). A claim is facially plausible when supported by "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint that contains "a formulaic recitation of the

5

elements of a cause of action" supported by mere conclusory statements or offers "'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Id.* (citation omitted). In evaluating the sufficiency of a complaint, the court accepts all factual allegations as true, draws all reasonable inferences in favor of the non-moving party, and disregards legal conclusions. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231–34 (3d Cir. 2008).

### III.  DISCUSSION

#### A.  The Court Has Personal Jurisdiction Over the Defendant

As the claims at issue here involve intentional torts, courts in the Third Circuit apply the "effects test" as set forth in *Calder v. Jones*, 465 U.S. 783, 787 (1984) to analyze personal jurisdiction. For Plaintiffs to show that Defendant is subject to specific jurisdiction under this test, they must sufficiently allege that (1) Defendant committed an intentional tort; (2) Plaintiffs felt the brunt of the harm in New Jersey such that New Jersey can be said to be the focal point of the harm; and (3) Defendant expressly aimed his tortious conduct at New Jersey. *Remick v. Manfredy*, 238 F.3d 248, 258 (3d Cir. 2001) (citing *Calder*, 465 U.S. at 787). Defendant argues that this Court lacks personal jurisdiction over him because Plaintiffs have not satisfied any of these elements. Br. at 7–8; Reply at 12–14. Plaintiffs respond that they have met the criteria to establish specific personal jurisdiction over the Defendant. Opp. at 3–6

The Court agrees with Plaintiffs that they have satisfied all three elements. First, Plaintiffs allege claims for defamation, which is an intentional tort. *See Remick*, 238 F.3d at 258. As discussed below, the Court concludes that Plaintiffs have adequately pled these claims and thus have met the first element of the effects test. *See Goldfarb v. Kalodimos*, 539 F. Supp. 3d 435, 454 (E.D. Pa. 2021).

Second, Courts regularly hold that individuals endure the bulk of the harm from defamation in their home state. *See Remick*, 238 F.3d at 258 (holding that the plaintiff "may reasonably

6

contend that he suffered the brunt of the harm" from the alleged defamatory statements in his home state because his "professional activities are centered in" that state and the defamatory statements "question[ed] [his] professional ability"); *Goldfarb*, 539 F. Supp. 3d at 454 (holding that allegations that the defendant's social media posts "impugned [plaintiff's] professional reputation and credibility and caused him embarrassment and humiliation" sufficed to show that plaintiff "felt the brunt of the alleged harms where he resides and works"). Plaintiffs, who are located in New Jersey, assert that they have been subject to social media posts that attribute criminality and acts of moral turpitude to Trainor, *see, e.g.*, FAC ¶¶ 27–29, which suffices to allege that the brunt of the harm has been felt in New Jersey. *See Goldfarb*, 539 F. Supp. 3d at 454; *Gorman v. Shpetrik*, No. 20-4759, 2022 WL 717075, at *3 (E.D. Pa. Mar. 10, 2022) (finding that allegations of a defamatory tweet against a Pennsylvania resident "implie[d] that Plaintiff felt the brunt of the resulting harm in Pennsylvania").

Third, Defendant expressly aimed his conduct at New Jersey by directing the allegedly defamatory statements to the New Jersey State Bar Association, the New Jersey Office of the Attorney General, and a New Jersey law school. FAC ¶¶ 25–26, 46; *see also Gorman*, 2022 WL 717075, at *3 (concluding that a social media post containing a defamatory statement that was directed at the plaintiff's employee who worked in the same state as plaintiff satisfied the third element of the effects test). Accordingly, Plaintiffs have pled facts sufficient to satisfy all three elements of the effects test, and the Court may exercise personal jurisdiction over Defendant.

### B. Plaintiffs Have Plausibly Pled Their Defamation Claims

To state a claim for defamation under New Jersey law, Plaintiffs must plausibly allege "(1) that [the] Defendant[] made a false and defamatory statement concerning [Trainor]; (2) that the statement was communicated to a third party and not privileged; and (3) when the plaintiff is a

7

private individual, fault that amounts to negligence."[3] *Kalski v. Brandywine Senior Living, LLC*, No. 22-4484, 2022 WL 17823862, at *5 (D.N.J. Dec. 20, 2022) (citation omitted). Defendant argues that the FAC does not contain the necessary specificity "other than some dates" and includes "[n]othing as to exactly what alleged statements were made, about whom they were made[,] or how they were published to third parties." Br. at 6–7. Defendant also asserts that "all of [the] statements are absolutely privileged" under the New Jersey litigation privilege. Reply at 11–12. Plaintiffs counter that they have provided specific factual allegations to overcome the motion to dismiss. Opp. at 7–12.

          *i.*    *Plaintiffs Adequately Allege Defamatory Statements*

Plaintiffs have adequately pled all three elements of their defamation claims. First, certain categories of statements[4] are defamatory as a matter of law, including if they impute to another person "a criminal offense" or "conduct, characteristics or a condition that is incompatible with his business, trade or office." *Moriarty v. Classic Auto Grp., Inc.*, No. 13-5222, 2014 WL 884761, at *4 (D.N.J. Mar. 6, 2014) (quoting *NuWave Inv. Corp. v. Hyman Beck & Co., Inc.*, 75 A.3d 1241, 1250 (N.J. Super. Ct. App. Div. 2013)). Plaintiffs allege numerous specific statements by McGibney on specific dates that fit into these two categories. Many of McGibney's posts accuse Trainor of criminal activity, including assertions that Trainor participated in a criminal conspiracy with a "felon" and a "pedophile" and provided financial assistance to a "convicted felon and fugitive on the run in Mexico." FAC ¶¶ 25–28, 31–32, 35–38. Additionally, McGibney posted multiple times that Trainor had committed unethical conduct as an attorney, such as by lying in a legal filing and making gross misrepresentations to the court in the Florida Action. *Id.* ¶¶ 20–23,

---

[3] Where, as here, plaintiffs raise a claim of defamation per se, they need not prove any special damages as an element of the claim. *J.G. v. C.M.*, No. 11-2887, 2014 WL 1628135, at *2 (D.N.J. Apr. 23, 2014).

[4] "A defamatory statement may consist of libel (i.e., a written defamatory statement) or slander (i.e., an oral defamatory statement)." *Read v. Profeta*, 397 F. Supp. 3d 597, 650 (D.N.J. 2019).

25. McGibney also added that he was "going to get [Trainor] disbarred" as a result of this alleged unethical conduct. *Id.* ¶¶ 23 (alteration in original). These alleged statements, which Plaintiffs assert were false, *id.* ¶ 44, would state a claim for defamation because they either impute a criminal offense or conduct incompatible with Trainor's professional character as an attorney, or both. *See Wright-Phillips v. United Airlines, Inc.*, No. 20-14609, 2021 WL 1221111, at *19 (D.N.J. Apr. 1, 2021) (finding allegations about statements sufficient to infer an accusation of criminal behavior, and thus, that the statements were defamatory); *Chun v. Sushi Maru Express Corp.*, No. 17-6411, 2018 WL 3158815, at *5 (D.N.J. June 28, 2018) (finding allegations that the defendants told others that plaintiff was a "criminal" was sufficient to plead a defamatory statement); *Clamente v. Espinosa*, 749 F. Supp. 672, 677–79 (E.D. Pa. 1990) (finding allegations that the defendant stated that an attorney had mafia ties was defamatory as a matter of law because it showed "both a disregard for the law he is charged to uphold, and a character inconsistent with that required of a member of the legal profession"); *Grayson v. Ressler & Ressler*, 271 F. Supp. 3d 501, 518 (S.D.N.Y. 2017) (noting that "statements which show lack of character or a total disregard of professional ethics, for example, statements that indicate an attorney has been disloyal to the best interest of his client or statements that accuse an attorney of unprofessional conduct" are defamatory per se (citation omitted)); *Spencer v. Am. Int'l Grp., Inc.*, No. 08-591, 2009 WL 47111, at *5 (E.D. Va. Jan. 6, 2009) ("[W]ords and statements which charge an attorney at law with unethical or unprofessional conduct and which tend to injure or disgrace him in his profession are actionable per se." (citation omitted)); *cf.* Restatement (Second) of Torts § 573 cmt. e. (1977) (emphasizing that statements are actionable per se where the "quality disparaged is of such a character that it is peculiarly valuable in the plaintiff's business or profession"). Thus, Plaintiffs have plausibly pled the first element of their defamation claim at this juncture.

      *ii.*    *McGibney Communicated the Defamatory Statements to Third Parties and Nearly All Communications Were Not Privileged*

Second, McGibney communicated these defamatory statements to third parties. Plaintiffs are required to plead facts sufficient to identify the defamer and the circumstances of publication. *Mangan v. Corp. Synergies Grp., Inc.*, 834 F. Supp. 2d 199, 206 (D.N.J. 2011) (citation omitted). "Publication" merely "means that the statement was 'communicated to a person or persons other than the plaintiff.'" *Wright-Phillips*, 2021 WL 1221111, at *19 (quoting *Feggans v. Billington*, 677 A.2d 771, 775 (N.J. Super. Ct. App. Div. 1996)). Plaintiffs allege that McGibney posted numerous defamatory statements on specific dates to his approximately 23,000 social media followers and, in some instances, directed those statements to Trainor's law school, law enforcement, and the New Jersey Bar Association. FAC ¶¶ 11, 13, 22–39. These allegations suffice to show that they were "communicated to . . . persons other than the plaintiff." *Gillon v. Bernstein*, No. 12-4891, 2013 WL 5159625, at *4 (D.N.J. Sept. 12, 2013) (concluding that the publication element was satisfied where the defamatory statement was "posted on a website"); *Maier v. Zellers*, No. A-1417-22, 2024 WL 959804, at *3 (N.J. Super. Ct. App. Div. Mar. 6, 2024) (finding that allegations that a statement was shared on social media sufficient to show publication to a third party).

Defendant unsuccessfully invokes the New Jersey litigation privilege to argue that all of the alleged defamatory statements are privileged as a matter of law. *See* Reply at 11–12. He contends that "the bulk of the statements made by [Defendant] were all made in connection with the Florida Action dealing with issues raised in the Florida Action" and are thus subject to the litigation privilege. *Id.* at 11. Statements are only protected under this privilege if they are "(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical

10

relation to the action." *Peterson v. HVM LLC*, No. 14-1137, 2016 WL 845144, at *6 (D.N.J. Mar. 3, 2016). The privilege covers statements made during court hearings, in court filings, and in settlement negotiations. *Id.* at *7 (citing *Hawkins v. Harris*, 661 A.2d 284, 289 (N.J. 1995)).

At this stage, it appears that only one alleged defamatory statement in the FAC—a declaration filed by McGibney in the Florida Action—qualifies for the litigation privilege. *See* FAC ¶¶ 20–21. Aside from this, the other alleged defamatory statements were published on social media, *id.* ¶¶ 22–38, rather than in "judicial or quasi-judicial proceedings." *Peterson*, 2016 WL 845144, at *6. Moreover, applying the litigation privilege to cover the alleged social media posts would greatly expand the privilege without furthering its underlying policy of ensuring "unfettered expression critical to courts' administration of justice." *See Cooper Health Sys. v. Virtua Health, Inc.*, No. 09-735, 2009 WL 10727975, at *5 (D.N.J. July 16, 2009) (declining on a motion to dismiss to apply the litigation privilege to statements made to the press concerning the outcome of a lawsuit); *Buchmiller v. Suntuity Solar, LLC*, No. 21-20412, 2022 WL 3908070, at *5 (D.N.J. Aug. 30, 2022) (collecting cases that declined to expand the privilege to press statements related to litigation). Thus, accepting the allegations in the FAC as true, as the Court must here, most of the complained-of statements do not qualify for the litigation privilege at this juncture.[5] *See Cooper Health Sys.*, 2009 WL 10727975, at *5.

Accordingly, only the alleged defamation in the Florida Action declaration is protected by the litigation privilege. Plaintiffs have plausibly pled the "publication" element for the rest of the statements provided in the FAC.

    *iii.*  *Plaintiffs Adequately Allege Fault*

---

[5] That the declaration appears to be privileged does not preclude Plaintiffs from proceeding on claims based on the non-privileged statements. *See Printing Mart-Morristown v. Sharp Elecs. Corp.*, 563 A.2d 31, 43–47 (N.J. 1989) (finding that only three of six alleged statements were actionable as defamation and permitting plaintiff's claims to proceed on those three statements).

Third, Plaintiffs have adequately alleged the requisite level of fault by McGibney. As Trainor is a private individual, Plaintiffs need only plead that McGibney "communicat[ed] the false statement while acting negligently in failing to ascertain the truth or falsity of the statement before communicating it." *Wright-Phillips*, 2021 WL 1221111, at *19 (alteration in original). The factual context in which parties interact can indicate that a defamer knew or should have known the true facts, and therefore, acted negligently. *Churchill Downs, Inc. NLR Ent., LLC v. Castanjen*, No. 14-3342, 2015 WL 5854134, at *9 (D.N.J. Oct. 5, 2015). Plaintiffs allege that McGibney "was and is a complete stranger to Trainor" and that "they had no prior or current acquaintance or relationship." FAC ¶ 12. Further, Plaintiffs assert that McGibney had no basis for his accusations against Trainor, including because McGibney had body camera footage showing that Trainor did not threaten or harass the process server. *Id.* ¶¶ 44, 50. These allegations plausibly show that McGibney was at least negligent as to the truth or falsity of his statements about Trainor. *See D & R Comms., LLC v. Garett*, No. 11-413, 2011 WL 3329957, at *9 (D.N.J. Aug. 2, 2011) (concluding that the plaintiff had adequately alleged fault where it asserted that the defendants made no effort to verify their allegations before publishing a disparaging letter); *Iglesias v. O'Neal*, No. 16-6291, 2017 WL 1170835, at *3 (D.N.J. Mar. 29, 2017) (finding that the communication of a false rape accusation to a third party satisfied all three elements, including fault); *Wright-Phillips*, 2021 WL 1221111, at *19 (concluding that plaintiff plausibly pled fault where she alleged that the defamer "intentionally made the false accusations"). Therefore, Plaintiffs have adequately pled all elements of their defamation claims.

### IV.     CONCLUSION

Accordingly, for the reasons stated above, **IT IS** on this 29th day of January, 2026;

**ORDERED** that Defendant's motion to dismiss (ECF No. 24) is **DENIED**.

**SO ORDERED.**

*s/ Claire C. Cecchi*
**CLAIRE C. CECCHI, U.S.D.J.**